Filed 12/20/13  P. v. Alvelais CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MADELEINE MARIA ALVELAIS,<br><br>    Defendant and Appellant. | C074196<br><br>(Super. Ct. Nos. CM033237, CM033374 & CM037679) |

Appointed counsel for defendant Madeleine Maria Alvelais asked this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Finding no arguable error that would result in a disposition more favorable to defendant, we will affirm the judgment.

BACKGROUND

Because both of defendant's cases were resolved by plea, the facts are taken from the probation officer's report.

1

Brian Vittitoe left his residence on October 24, 2010, and did not lock his front door. When he returned home, nothing seemed amiss but he later discovered that $650 in cash and a bottle of medicine were missing.

On November 3, 2010, officers executed a search warrant at defendant's residence and found, among other things, Vittitoe's driver's license. Vittitoe told an officer that he did not know defendant and defendant did not have permission to have his license. Defendant was booked into jail and later released on her own recognizance.

Two years later, on November 5, 2012, Karen Maloney reported a residential burglary. She was employed by the homeowner who was away on a business trip. While working in her office at the home, Maloney saw a woman run into a bedroom. Maloney confronted the woman, who claimed she was looking for her walking partner. But when a male contractor approached the front door, Maloney opened the door for him. The woman fled out the door, entered a car parked near the garage and drove away. Maloney recorded the license plate number. A records check showed that the car was registered to defendant, and Maloney identified defendant from a photograph.

Defendant's nearby apartment was placed under surveillance. After she drove away in a vehicle matching the description given by Maloney, officers conducted a traffic stop of defendant. Maloney went to the scene of the traffic stop and identified defendant as the person who had been in her employer's residence. Several items of stolen property were recovered.

In case No. CM033237 (the 2010 case), defendant pleaded guilty to first degree burglary. (Pen. Code, §§ 459, 460, subd. (a).)[1] In exchange, two counts of receiving stolen property (§ 496, subd. (a)) were dismissed with a *Harvey* waiver.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

In case No. CM037679 (the 2012 case), defendant pleaded guilty to first degree burglary and admitted that a person other than an accomplice was present during the commission of the burglary. (§§ 459, 460, subd. (a), 667.5, subd. (c)(21).) In exchange, six counts of receiving stolen property and an on-bail allegation (§ 12022.1) were dismissed with a *Harvey* waiver.

The trial court sentenced defendant to five years four months in prison. In the 2010 case, the trial court awarded defendant three days of custody credit and no conduct credit, and ordered her to pay a $280 restitution fine (§ 1202.4), a $280 parole revocation fine (§ 1202.45), an $850 penal fine (§ 672) including penalty assessments, a $40 court operations fee (§ 1465.8, subd. (a)(1)), a $30 court facilities assessment (Gov. Code, § 70373), and a $39 theft fine (§ 1202.5) including penalty assessments.

In the 2012 case, the trial court awarded defendant 209 days of custody credit and 31 days of conduct credit, and ordered her to pay a $1,100 restitution fine (§ 1202.4), a $1,100 parole revocation fine (§ 1202.45), an $850 penal fine (§ 672) including penalty assessments, a $40 court operations fee (§ 1465.8, subd. (a)(1)), a $30 court facilities assessment (Gov. Code, § 70373), and a $39 theft fine (§ 1202.5) including penalty assessments.

The trial court also ordered defendant to pay a $736 presentence investigation report fee. (§ 1203.1b.)

DISCUSSION

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra,* 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief.

Defendant filed a supplemental brief contending her "constitutional rights were violated" because she was not provided her "legal right to an impartial and unbiased sentencing judge." She claims the sentencing judge, Tamara Mosbarger, "was biased by

3

her feelings regarding [defendant's] 2007-2008 family law case that she presided over. Even though this family law case was dismissed, with no fault found on [defendant's] part, Judge Mosbarger still used untrue and unsubstantiated details of that case for justification of [defendant's] criminal court sentencing. Judge Mosbarger recalled and stated her feelings about that 2007-2008 family law case as part of her justification for sentencing [defendant] to a mid-term prison sentence."

Specifically, defendant claims Judge Mosbarger made "reference to a Dr. Kirk Casey. Kirk Casey had no part in [defendant's] criminal case only in [defendant's] dismissed 2007 family law case. Judge Mosbarger states that she had told [defendant] previously to stop using drugs with Dr. Casey and that [defendant] had been previously warned."

Defendant concedes that her sentence was within the scope of the plea negotiation but claims it was "handed down with the judge's own bias and negative feelings surrounding that family law case which had nothing to do with [defendant's] criminal case sentencing." Defendant adds that, following the 2007 family law case, she had recused Judge Mosbarger from a subsequent family law matter but her trial counsel did not seek to remove the judge from the present proceeding.

The sentencing transcript does not support defendant's contention. The trial court stated in relevant part: "[L]ooking at this as two and a half years of this going on, and [defendant's] DUI [driving while under the influence] was in 2007. And that was, if I recall, a rollover accident on the Skyway where her car rolled several times. And she was lucky that she walked away from that and didn't take anyone with her. And I believe she said she was on the way to pick up her son from daycare at the time the police talked to her. [¶] I know that we talked together about my concerns about your drug and alcohol abuse addiction, your prescription drug addiction with your ex-husband present, about the numerous drugs that you were taking and that that was a concern to me. [¶] You have been to Chico Recovery Center. You have been to AA [Alcoholics Anonymous] where

4

you admit meeting Dr. Casey who you began continuing to use prescription drugs with. You've had DUI classes. You've had the advantage of being given probation in your DUI class and you have not taken advantage of any of those services."

The trial court then found that defendant was eligible for probation only in an unusual case; found this case was not unusual; denied probation in any event due to criminal sophistication and poor performance on probation; found that circumstances in aggravation do not outweigh circumstances in mitigation; and imposed the middle term of imprisonment.

Nothing in this record suggests the trial court was biased against defendant based upon the 2007 family law case. Defendant has not identified any of the court's remarks as containing "untrue and unsubstantiated details" of that prior case. The court's remark, "we talked together about my concerns about your drug and alcohol abuse addiction, your prescription drug addiction with your ex-husband present," appears to refer to the 2007 matter. But the reference is to defendant's ex-husband, not Dr. Casey, and the mere fact of prior discussion does not suggest that the trial court harbored bias against defendant.

The trial court's only reference to Dr. Casey was the statement: "You have been to AA where you admit meeting Dr. Casey who you began continuing to use prescription drugs with." But defendant admitted as much in the present case; the trial court did not rely impermissibly on its recollection of the 2007 case.

In her interview with the probation department, "defendant stated not only was her criminal history accurate but it began in conjunction with the height of her substance abuse. Her alcohol abuse and abuse of her prescription medications played a part in her separation with her second husband. Her substance abuse increased during the separation and divorce; she ended up driving under the influence. While attending 12-step meetings she met a physician, who would later become her fiancé. She, and her fiancé, continued to abuse medications. In 2010, their relationship 'fell apart.' She took the end of the

5

relationship particularly hard and she turned to the medications to 'numb' herself. She obtained prescriptions from numerous doctors within the community."

Thus, in her statement to the probation department, defendant acknowledged the facts regarding Dr. Casey that the trial court discussed at sentencing. Further details of defendant's relationship with Dr. Casey appear in a letter to the sentencing court from defendant's mother, Lynne W. Lamprecht. Any judge conducting the sentencing proceeding would have been aware of these facts from the probation report. The record does not show that the trial court relied on its recollection of Dr. Casey from the prior case or that it harbored any bias against defendant. There was no error.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

DISPOSITION

The judgment is affirmed.

_____MAURO_____, J.

We concur:

_____HULL_____, Acting P. J.

_____DUARTE_____, J.

6